IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MICAH WILLIS, BRUCE THOMPSON )
and TIM FRATTO on behalf of themselves )
and all others similarly situated, )
)
                Plaintiffs, )    Civil Case No. 07-1252-KI
)
   vs. )    OPINION AND ORDER
)
IRONWOOD COMMUNICATIONS, INC., )
a Nevada corporation, and 180 CONNECT, )
INC., Nevada corporation, )
)
                Defendants. )
)

      Kim D. Stephens
      Beth E. Terrell
      Toby J. Marshall
      Jennifer Rust Murray
      Tousley Brain Stephens PLLC
      1700 Seventh Avenue, Suite 2200
      Seattle, Washington  98101-4416

          Attorneys for Plaintiffs

Page 1 - OPINION AND ORDER

Douglas S. Parker
Jennifer L. Mora
Littler Mendelson, P. C.
1750 S. W. Harbor Way, Suite 450
Portland, Oregon  97201

Leigh Ann Tift
Littler Mendelson, P. C.
701 Fifth Avenue, Suite 6500
Seattle, Washington  98104

        Attorneys for Defendants

KING, Judge:

Plaintiffs Micah Willis, Bruce Thompson and Tim Fratto bring a class action on behalf of themselves and other employees of defendant 180 Connect, Inc., and its wholly owned subsidiary, Ironwood Communications, Inc. (together, "Ironwood").  Before the court is plaintiffs' Motion for Class Certification (#18).  For the following reasons, I grant the motion.

## BACKGROUND

Ironwood installs satellite dishes, primarily for DIRECTV, throughout Oregon, including in Portland, Medford/Klamath Falls, Eugene, and Bend.  Until recently, its Oregon headquarters were in Vancouver, Washington, with a storage facility in Medford.  It opened a Eugene office in 2005, later moving the office to Albany, and a few months ago it opened a Bend office.  All locations use the same timekeeping system.  Remote technicians, who serve rural areas, are not required to meet at the Vancouver, Albany, Medford or Bend offices before they begin their day.

The named plaintiffs are former employees who were field technicians and who were paid on a piecework basis.  Piecework pay varied depending upon the number and kind of job. Ironwood uses the number of hours each field technician works and the piecework pay to

Page 2 - OPINION AND ORDER

determine the field technician's "hourly wage." The hourly wage is relevant because technicians are entitled to overtime, at 50 percent the average rate of pay for the week, over forty hours. For example, if a technician works 50 hours in a week and earns $800 in piecework, he will have an average hourly rate of $16, and will be entitled to $80 in overtime (.5 x $16 x 10). Alternatively, if the technician's average hourly rate falls below the minimum wage, Ironwood is required to adjust his pay to ensure he is paid the current minimum wage rate.

In addition, Ironwood employs people who perform administrative tasks for the company, such as dispatchers, warehouse employees and clerical employees, who work on-site and who are paid an hourly wage.

Plaintiffs allege Ironwood failed to pay overtime, failed to pay minimum wage, failed to provide rest and meal breaks, wrongfully deducted uniform and tool expenses, and failed to pay wages owed. Plaintiffs also allege a willful refusal to pay wages. They propose a class of "[a]ll current and former hourly employees of Ironwood Communications, Inc. in the state of Oregon from April 10, 2002 through the date of final disposition of this action." Pls.' Mem. at 1. Accordingly, the proposed class includes not just the field technicians, but also administrative employees.

Several hundred Ironwood employees are currently involved in a class action in the Western District of Washington, involving some of the same managers and the same wage and hour claims. Judge James Robart is presiding over the litigation. Judge Robart recently certified the case as a class action, but the class includes only former and current employees who live in Washington. <u>Kirkpatrick v. Ironwood Communications, Inc.</u>, No. C05-1428 JLR. As a result,

employees who live in Oregon, but report to Ironwood's Vancouver, Washington office, are excluded from the class.

## LEGAL STANDARDS

Rule 23 allows suits to go forward as class actions if:

> (1) [T]he class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class [and] [t]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(a) and (b)(3).

A court may certify a class only if it is satisfied that all of the prerequisites of Rule 23(a) and, in this case, Rule 23(b)(3) have been met. The party seeking class certification bears the burden of proving each of the elements of Rule 23.

## DISCUSSION

I.    Review Based on Allegations

As an initial matter, Ironwood argues the putative class members may not rely solely on the allegations in the Complaint in demonstrating their qualifications as class representatives.

I disagree with Ironwood. In addition to the allegations in the Complaint, plaintiffs submitted 18 declarations from putative class members, both field technicians and administrative employees, who worked for Ironwood ranging from April 2002 until December 2007, and one from a current employee. This is all that is required of plaintiffs. See Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975) (court must accept allegations as true, and may require

Page 4 - OPINION AND ORDER

supplemental information to "allow an informed judgment" on the Rule 23 requirements). Plaintiffs have provided the "specific presentation identifying the questions of law or fact that" are common between the putative class representatives and those they attempt to represent. General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 158 (1982).

II.     Rule 23(a) Criteria

    A.     Numerosity

Plaintiffs meet the numerosity requirement since the class will consist of the approximately 300 to 500 individuals who were former or are current employees of Ironwood during the relevant period. This is a sufficiently large number of individuals to make joinder impracticable. See Immigrant Assistance Project of Los Angeles County Federation of Labor v. I.N.S., 306 F.3d 842, 869 (9th Cir. 2002) (noting cases that found classes of 39, 64, and 71 met criterion). Ironwood does not disagree.

    B.     Commonality

The commonality prong is to be construed permissively, and may be satisfied by a common course of conduct. Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998); Blackie, 524 F.2d at 902. "The existence of shared legal issues with divergent factual predicates is sufficient" to comply with Rule 23(a)(2). Hanlon, 150 F.3d at 1019. I find, from the evidence now before the court, that plaintiffs have satisfied the commonality prong.

Plaintiffs submit evidence that Ironwood instructed technicians not to record all of their hours, and that it would actually benefit them not to because their hourly rate of pay would be higher. Pls.' Ex. 24 (manager in Medford "keep[s] his guys from getting minimum wage adjusted" by having them "claim fewer hours than worked"). Managers were told to keep

overtime to a minimum, and that such overtime had to be justified in writing. Pls.' Ex. 25 ("No overtime approved!!!"); Pls.' Ex. 26 ("There is to be NO support overtime without Area Manager approval (better be good)."); Pls.' Ex. 27 ("You will need to explain to your Managers that they will be held responsible for any overtime that is approved, and they will need to justify their decision in writing."); Pls.' Ex. 28 (the goal on overtime "is to be at 3% or less"). Whether this evidence points to a common course of conduct to fail to pay overtime, or whether Ironwood was engaging in an accepted and legal business practice can be resolved on a class-wide basis.

Furthermore, plaintiffs provide evidence that employees were required to write down that they had taken a meal break even if they had not. In addition to the named plaintiffs' allegations, plaintiffs submit declarations of putative class members. In those declarations, several employees testify that they rarely took lunch breaks, that managers told them to eat while driving between jobs, but that they were required to write down a break on their time sheets. See Balero Decl. ¶ 4; Buchanan Decl. ¶ 6; Chittester Decl. ¶ 3; Davis ¶ 4. Ironwood collected GPS data on Micah Willis's whereabouts, a named plaintiff here, and argues that the data demonstrates employees worked without a fixed work schedule, without supervision, and that employees over-reported hours rather than under-reported them. Such evidence underscores the existence of commonality and can be used to show Ironwood did not "suffer" or "permit" plaintiffs to work hours for which they were not paid. See ORS 653.010.

Similarly, whether Ironwood improperly deducted the cost of tools and the cost to clean and rent the uniforms Ironwood required technicians to wear is another common issue among the class members. Finally, whether Ironwood reduced piecework pay without notice, and whether technicians did not get paid for piecework they completed is a common question affecting a

Page 6 - OPINION AND ORDER

number of class members. Chittester Decl. ¶ 9 (Ironwood told her the company "did not have enough money to pay" for certain piecework); Buchanan Decl. ¶ 8 ("I kept track of the work I did on a weekly basis and my productivity statement . . . did not correlate").

I am not yet concerned about any differences between the working conditions of administrative employees, field technicians, and remote field technicians. If, as the case proceeds, it becomes apparent that the positions are so different as to affect the applicable legal analysis, I will create subclasses.

C.   Typicality

The next question is whether the representative parties are typical of the class. "The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class. Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992) (internal citations and quotations omitted).

The named plaintiffs allege that they have collectively experienced all of the purported statutory violations. The fact that the named plaintiffs held different jobs, worked in widespread locations around Oregon, and were supervised by different people is of no moment where, as here, plaintiffs allege they experienced the same company-wide policies. The nature of the claims for all is the same–failure to pay overtime, failure to pay for hours worked, failure to provide rest and lunch breaks, and wrongful deductions.

D.    Adequate Representation

Finally, the remaining question under the Rule 23(a) criteria is whether the named plaintiffs will adequately protect the interests of the class. Adequate representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." Brown v. Ticor Title Ins. Co., 982 F.2d 386, 390 (9th Cir. 1992) (quotation omitted). Plaintiffs assert each representative has experienced the same injuries as the class members, and will participate in the suit as requested–respond to production requests, sit for depositions, and testify at trial. Nothing in the record indicates that the named plaintiffs would not "vigorously" act on behalf of the class. See Hanlon, 150 F.3d at 1020. In addition, Ironwood points to no potential conflicts of interest between the named plaintiffs or their counsel and other class members.

III.    Rule 23(b) Criteria

Plaintiffs propose certification under Rule 23(b)(3), which is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action." Hanlon, 150 F.3d at 1022, quoting 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1777 (2d ed. 1986). The Rule 23(b)(3) factors require that issues "of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

With regard to the first factor, unlike the 23(a)(2) factor, class certification under Rule 23(b)(3) is appropriate "[w]hen common questions present a significant aspect of the case and

they can be resolved for all members of the class in a single adjudication." Hanlon, 150 F.3d at 1022, quoting Wright, Miller & Kane, § 1778.

I find that the questions common to the class members predominate over any questions affecting only individual members. Plaintiffs have presented sufficient evidence of a company-wide policy on overtime and meal and rest breaks to merit class-wide treatment, as well as Ironwood's implementation of tool and uniform deductions and its alteration of piecework rates. Ironwood is concerned individual issues will predominate, but the questions they raise go primarily to the issue of damages. For example, Ironwood's contention that individual employees over-reported their time, rather than under-reported it, is a question of how many hours an employee worked and can be resolved in the damages portion of the litigation.

Moreover, plaintiffs have submitted a detailed litigation plan to illustrate how common issues can predominate over individualized issues. Plaintiffs propose to bifurcate the trial into liability and damages phases. Plaintiffs intend to rely on representative testimony to prove the alleged wage and hour law violations, and have a detailed plan to deal with the damages phase of the case.

Finally, I agree that a class action would be the least expensive alternative, and will avoid obtaining inconsistent results in multiple cases. Class actions are the typical way of resolving allegations of wage and hour violations.

///


///

## CONCLUSION

For the foregoing reasons, I GRANT plaintiffs' Motion for Class Certification (#18). Plaintiffs have submitted proposed forms of notice attached to their memorandum in support of class certification. See Appendix A and Appendix B (notice to class members and notice on an Internet website to be maintained by Class counsel). Ironwood should immediately confer with plaintiffs if it requests changes to the proposed forms of notice. If the parties are unable to agree, they should contact the court and request a telephone conference.

IT IS SO ORDERED.

Dated this      22nd       day of May, 2008.

       /s/ Garr M. King
       Garr M. King
       United States District Judge